IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Argeni Bataldo-Castillo # 27946-069   )<br>                                          )<br>                      Petitioner,     )<br>                                          )<br>       vs.                              )<br>                                          )<br>Warden Travis M. Bragg,           )<br>                                          )<br>                      Respondent.  )<br>_____) | Civil Action No. 6:15-3717-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

      This matter is before the court on the respondent's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) or, in the alternative, for summary judgment pursuant to Rule 56 (doc. 11).  The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(c)(D.S.C.), this magistrate judge is authorized to review petitions for relief and submit findings and recommendations to the district court.

      The respondent filed the motion on November 10, 2015 (doc. 11).  On November 12, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the motion to dismiss and summary judgment procedures and the possible consequences if he failed to adequately respond to the motion (doc. 12).  On December 10, 2015, the petitioner filed a response in opposition to the motion (doc. 14), and the respondent filed a reply on December 21, 2015 (doc. 16).

## **FACTS PRESENTED**

      The petitioner is an inmate currently incarcerated at the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina.  On March 27, 2009, the petitioner was arrested by federal authorities in the Commonwealth of Puerto Rico, for illegal re-entry after

deportation (doc. 11-1, Roush decl. ¶ 4 & att. B).  On June 15, 2009, the petitioner was sentenced in the United States District Court for the District of Puerto Rico to an eight-month term of imprisonment in Case No. 3:05-CR-004-001, upon revocation of his supervised release term (*id.* ¶ *5 &* att. C).  The United States Bureau of Prisons ("BOP") prepared a sentence computation for the petitioner based on the eight-month term of imprisonment, commencing on June 15, 2009, the date of imposition (*id.* ¶ 6 & att. D).  The petitioner received prior custody credit from March 27, 2009, the date of his arrest, through June 14, 2009, the day before his sentencing hearing, which resulted in a projected release date of November 25, 2009 (*id.* ¶ 6 & att. D).

On September 16, 2009, in Case No. 3:09-CR-162-001 the petitioner was sentenced to a 33-month term of federal imprisonment with a three-year term of supervised release by the United States District Court for Puerto Rico for re-entry after deportation subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2)) (*id.* ¶ 7 & att. A at 2).  This sentence was to be served consecutively to the eight-month term of imprisonment imposed for the supervised release revocation in Case No. 3:05-CR-004-001 (*id.* ¶ 7 & att. E).

On November 25, 2009, the petitioner was released in error to the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") on a detainer on his projected release date for Case No. 3:05-CR-004-001, despite having the remaining consecutive 33-month sentence in Case No. 3:09-CR-162-001.  The error occurred as the judgment in Case No. 3:09-CR-162-001 was not properly reported to the BOP to be calculated with his existing federal sentence.  Had the BOP received the judgment in Case No. 3:09-CR-162-001, the 33-month sentence would have been calculated on the petitioner's sentence monitoring computation data to begin on November 26, 2009, the date he completed his eight-month term of imprisonment for revocation of his supervised release (*id.* ¶ 8 & atts. E, F)

On December 16, 2009, the petitioner was deported by ICE to his home country of the Dominican Republic. On July 6, 2010, the petitioner was arrested by federal authorities in Puerto Rico on new federal charges. On January 17, 2012, the petitioner was sentenced in Case No. 3:10-CR-253-001 by the United States District Court for the District of Puerto Rico to a 96-month term of imprisonment for conspiracy to possess with the intent to distribute at least 2 but less than 3.5 kilograms of cocaine, in violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(B)(ii)(II) (*id.* ¶ 9 & atts. B, G).

The BOP has prepared a sentence computation for the petitioner based on an aggregate 129-month term of confinement in Case Nos. 3:09-CR-162-001 and 3:10-CR-253-001, commencing on July 6, 2010, the date he last entered federal custody. His projected date of release is November 17, 2019, with credit for Good Conduct Time (*id.* ¶ 10 & att. H).

In his petition, the petitioner requests credit from November 26, 2009, until July 6, 2010, "for time he spent at liberty due to a custodial mistake by the BOP and the Bureau of Immigration and Customs Enforcement . . . due to no fault of his own" (doc. 1 at 6). He asserts his "sentence should run through the period of interruption" (*id.*). He further claims that he is being denied credit for time he served at the Metropolitan Detention Center ("MDC") Guaynabo in Puerto Rico from July 7, 2010, to January 17, 2012 (*id.* at 7). Finally, the petitioner asserts that the BOP had no authority to combine his 33-month and 96-month sentences into a 129-month aggregated sentence (doc. 1-1 at 3).

## **APPLICABLE LAW AND ANALYSIS**

### *Exhaustion of Remedies*

The respondent first argues that the petitioner has not properly exhausted his administrative remedies. Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit*

*Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir.2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks omitted)). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Any arguments not advanced at each step of the administrative appeal are procedurally defaulted. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir.2002). Moreover, if a prisoner cannot obtain an administrative remedy because of his failure to timely appeal at the administrative level, then the prisoner has procedurally defaulted his § 2241 claim, unless the prisoner can demonstrate cause and prejudice for the failure. *See, e.g., Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir.1996), *cited with approval by Watkins v. Compton*, 126 F. App'x 621, 622 (4th Cir. 2005).

The BOP's grievance procedure is a three-tiered process whereby an inmate may complain about any aspect of his confinement. 28 C.F.R. § 542.10. The process begins with the inmate attempting to informally resolve the complaint with a staff member. *Id.* § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint to the Warden. This complaint must be filed within 20 calendar days from the date on which the basis for the complaint occurred. *Id.* § 542.14(a). If the inmate is not satisfied with the Warden's response, that response may be appealed to the Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within 30 calendar days of the date the Regional Director signed the response. *Id.* § 542.15(a).

All formal requests are logged into the national database and given a unique identifying number. An extension is added to the number that denotes the level at which the

claim is filed. Subsequent appeals of an issue will have the same identification number, with a different extension identifying the level where filed. The extension "-F1" indicates the filing was at the institution or field level. The extension "-R1" indicates the filing was at the regional level. The extension "-A1" indicates the filing was at the national level. If an appeal is rejected and re-filed at the same level, perhaps correcting the identified deficiencies, then the number will change but the letter will remain the same. For example, the extension "-R2" indicates an appeal was rejected at the regional level once and the inmate has re-filed, presumably after correction of the noted deficiencies (doc. 11-2, Meredith decl. ¶ 4).[1]

On or about July 3, 2014, the petitioner filed Remedy No. 785474-F1 at FCI Bennettsville requesting that 18-months of prior custody credit (from July 6, 2010, through January 17, 2012) be applied to his sentence; that his 33-month sentence be removed from his BOP sentence calculation; and that his sentence be recalculated (*id.* ¶ 6 & att. A at 1, B at 4-5). On or about July 10, 2014, the respondent denied this request, noting that the petitioner's sentence was calculated correctly (*id.* ¶ 7 & att. A at 2, att. B at 6).

On July 24, 2014, the petitioner filed Remedy No. #785474-R1 with the Southeast Regional Office ("SERO") appealing the Warden's denial of his administrative remedy. On the same day, the SERO rejected Remedy No. 785474-R1, stating that the petitioner did not submit his request on the proper form and noting that he could resubmit the remedy to the SERO within ten days (*id.*).

On or about September 8, 2014, the petitioner submitted Remedy No. 785474-R2 to SERO. On or about October 2, 2014, the SERO provided a response, for informational purposes only, noting that his sentence was properly calculated by the BOP (*id.*, & atts. A at 3, B at 8-10)

---

[1] In support of the motion, the respondent has submitted the declaration of L. Meredith, Attorney Advisor for the BOP, who is currently assigned to the South Carolina Consolidated Legal Center (doc. 11-2, Meredith decl. ¶ 1).

On or about November 3, 2014, the petitioner filed Remedy No. 785474-A1 with the BOP Central Office. This remedy was rejected because he failed to provide a copy of the institution Administrative Remedy BP-9 form with his appeal. The petitioner was notified that he could resubmit his appeal in proper form to the BOP Central Office within fifteen days of the date on the rejection notice (*id*. ¶ 9). Instead, the petitioner re-filed this administrative remedy with SERO in Remedy No. 785474-R3. This remedy was rejected due to being filed at the wrong level or office. A review of his administrative remedy history indicates that the petitioner failed to resubmit Remedy No. 785474 to the BOP Central Office. Thus, Remedy No. 785474 was not properly exhausted through the administrative remedy process (*id*.).

On December 12, 2014, the petitioner filed Remedy No. 804473-F1 at FCI Bennettsville requesting credit for "time at liberty," to include seven months and eleven days of jail credit from November 26, 2009, through July 7, 2010. Warden Bragg denied this remedy on December 24, 2014 (*id.* ¶ 10 & atts. A at 4, C at 6-7). On or about January 12, 2015, the petitioner filed Remedy No. 804473-R1 with the SERO seeking credit for time in jail. The SERO rejected the remedy on January 14, 2015, noting that the petitioner was appealing more than one remedy on this form and he must appeal Remedy Nos. 785474[2] and 804473 separately. The SERO notified the petitioner that he could resubmit his appeal in proper form within ten days of the rejection form (*id.* ¶ 11 & att. C at 8-10).

On or about February 10, 2015, the petitioner filed Remedy No. 804473-R2 seeking credit for jail time. Again, the SERO rejected the remedy on February 11, 2015, noting that the petitioner was appealing more than one remedy on this form and he must appeal Remedy Nos. 785474 and 804473 separately. The SERO notified the petitioner that he could resubmit his appeal in proper form within ten days of the rejection form. Instead

---

[2] This remedy was referred to as No. 785471 in error.

of resubmitting the remedy to SERO, the petitioner filed Remedy No. 804473-A1 with the BOP Central Office on March 4, 2015 (*id.* ¶ 12 & atts. C at 11-16). The Central Office rejected this remedy on May 12, 2015, noting that the petitioner was appealing more than one remedy on this form and he must appeal Remedy Nos. 785474 and 804473 separately. He also submitted the remedy to the wrong level as he failed to complete Remedy No. 804473-R2 prior to filing with the BOP Central Office (*id*. ¶ 13).

The respondent argues that the petitioner failed to exhaust all available steps of the administrative remedy process provided by the BOP with regard to Remedy Nos. 785474 and 804473. The undersigned agrees. Moreover, the petitioner has not shown any cause or prejudice that prevented him from exhausting the administrative remedy process on these remedies. The petitioner argues in his response that "[i]t is undisputed . . . that [he] did not fully exhaust all of his administrative remedies"; "[h]owever, given his attempts at exhaustion and the procedural posture of this case[,] the petitioner believes that the exhaustion requirement should be waived in this instance" (doc. 14 at 3). The petitioner notes that "his appeal to BOP Central Office was rejected on several occasions, and it does not appear that the petitioner could have overcome the hurdles for rejection" (*id.*). He goes on to argue that, "considering he had been denied relief at each of the previous levels, it is unlikely that fully completing the final step of exhaustion would have resulted in any relief for the petitioner" (*id.*). However, the petitioner's claims of futility are speculative and unsupported. As argued by the respondent, each time the petitioner's administrative remedies were rejected, he had an opportunity to correct the error and resubmit the remedy to the BOP. The petitioner has failed to show cause and prejudice for his failure to exhaust, and, therefore, the case should be dismissed for failure to exhaust his administrative remedies. Moreover, even if the petitioner could establish good cause for his failure to exhaust his administrative remedies, he has not established that he is entitled to habeas relief, as will be discussed below.

7

***Merits***

      ***Standard of Review***

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

8

### *Computation of Sentence*

The computation of a federal sentence is the responsibility of the Attorney General of the United States and has been delegated to the BOP. *See United States v. Wilson*, 503 U.S. 329, 331 (1992); 28 C.F.R. § 0.96. The computation of a federal sentence requires consideration of two separate issues: the commencement date of the federal sentence and whether the defendant can receive credit for time spent in pretrial custody prior to commencement of the federal sentence (doc. 11-1, Roush decl. ¶ 11). The BOP has promulgated Program Statement 5880.28 in the *Sentence Computation Manual* to provide guidance on the application of the federal statutes in federal sentence computations (*id.*). The petitioner was sentenced in accordance with the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), Public Law 104-134, which applies to sentences for offenses committed on or after April 26, 1996 (*id.* ¶ 12).

In determining the commencement date of a federal sentence, the BOP is guided by 18 U.S.C. § 3585(a), as set forth in Program Statement 5880.28, which states:

> (a) Commencement of sentence-- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(*Id.* ¶ 13 & att. I, Program Statement 5880.28, *Sentence Computation Manual*, CCCA of 1984, p. 1-12 (quoting 18 U.S.C. § 3585(a)). Of further relevance to the commencement of the federal sentence is the guidance set forth in 18 U.S.C. § 3584(a), which states, in relevant part:

> (a) Imposition of concurrent or consecutive terms -- If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently. . . .

9

(Doc. 20-1, Roush decl. ¶ 14 & att. J, Program Statement 5880.28, *Sentence Computation Manual*, CCCA of 1984, p. 1-31 (quoting 18 U.S.C. § 3584(a)). The BOP interprets the phrase, "an undischarged term of imprisonment," as applying to any lawfully imposed federal or state, local or foreign (non-federal) sentence or revocation of a conditional release term (probation, supervised release, parole, etc.) (*id.*).

The application of prior custody credit toward a federal sentence is governed by 18 U.S.C. § 3585(b), which states:

> (b) Credit for prior custody--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b). The Supreme Court has found that under this statute, "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337. Accordingly, under § 3585(b), prior custody credit cannot be granted if the prisoner had received credit toward another sentence. *See U.S. v. Brown*, 977 F.2d 574 (4th Cir. 1992) (defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence).

### *November 25, 2009, to December 16, 2009*

The petitioner claims that he is entitled to custody credit for the time between November 25, 2009, and December 16, 2009, when he was "was still in BOP custody . . . before being deported to the Dominican Republic" (doc. 14 at 6). As set forth above, the

10

petitioner was released from the BOP in error to an ICE detainer on November 25, 2009, and he was deported to his home country of the Dominican Republic on December 16, 2009 (doc. 11-1, Roush decl. ¶¶ 8-9 & att. F). The federal courts have found that detention by immigration authorities pending deportation is considered civil in nature, rather than criminal. *See Ramirez–Osorio v. I.N.S.*, 745 F.2d 937, 944 (5th Cir. 1984). In this case, the petitioner's time in ICE custody pending deportation to the Dominican Republic was not time served in official detention pending prosecution pursuant to 18 U.S.C. § 3585(b). *See Solorzano-Cisneros v. Zych*, C.A. No. 7:12-cv-537, 2013 WL 1821614, at *2 (W.D. Va. April 30, 2013) ("The period between December 6, 2008 and December 29, 2008, when Solorzano–Cisneros was held in ICE custody pending civil deportation review, does not constitute 'official detention' under pending criminal charges for purposes of § 358[5].") (citation omitted); BOP Program Statement 5880.28, *Sentence Computation Manual*, CCCA of 1984, p. 1–15A, www.bop.gov/policy/progstat/5880_028.pdf ("Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in 'official detention' pending criminal charges.") (citations omitted). Accordingly, the petitioner is not entitled to credit for this time period.

### December 17, 2009, to July 5, 2010

The petitioner claims that he is entitled to credit for the time "he spent at liberty due to a custodial mistake by the BOP and the Bureau of Immigration and Customs Enforcement . . . due to no fault of his own" (doc. 1 at 6). The petitioner further argues that he deserves credit for his time while out on release because "he should have the right to serve his sentence continuously without interruption" (doc. 1-1 at 4). The petitioner cites *Lanier v. Williams*, 361 F. Supp. 944 (E.D.N.C. 1973), claiming that he should not have to

11

serve his sentence in installments. In *Lanier,* the court granted the prisoner's petition for writ of habeas corpus under 28 U.S.C. § 2254, finding as follows:

> Once the state, through acts or omissions of its officials, has led a person, through no fault of his own, to believe that he is free of a prison sentence, and makes no attempt for prolonged period of years to reacquire custody over him, that person should be able to rely on the state's action or inaction and assume that further service of the sentence will not be expected of him. The state should not later be heard to assert a right to custody over the person whom it has so misled, and to permit the state to do so offends the Due Process Clause of the Constitution.

361 F. Supp. at 947. However, since *Lanier*, the Fourth Circuit has held that a person erroneously released and then reincarcerated must show that the government's actions violated his substantive due process rights. *Hawkins v. Freeman*, 195 F.3d 732, 740-47 (4th Cir. 1999). The court noted that a violation of the prisoner's rights in such a case occurs only if the state's actions were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 738 (citation omitted). "If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest." *Id.* In *Hawkins*, the state released a prisoner on parole in error, then, upon catching the error, revoked his parole, issued a warrant, arrested the prisoner, and reincarcerated him. The Fourth Circuit found that the Parole Commission's act of re-imprisoning the prisoner could not be considered "shocking to the contemporary conscience." *Id.* at 746-47, 750. This standard requires that the petitioner have alleged facts showing that officials committed more than "mere negligence," such as by acting with "a vindictive or oppressive purpose." *Id*.

The petitioner requests that the court "treat the petitioner's situation as if the government failed to reacquire jurisdiction over the petitioner after he had been deported and such inaction by the . . . [BOP] . . . and the government was the equivalent of a pardon or commutation of his sentence and that to require the petitioner to complete the

12

consecutive thirty three (33) month sentence imposed prior to his deportation offends the due process clause of the U.S. Constitution" (doc. 1-1 at 4). Here, the petitioner has not shown any actions of the BOP or ICE were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins*, 195 F.3d at 738. Rather, the facts presented show that the judgment in Case No. 3:09-CR-162-1 was not reported to the BOP to be calculated with the federal sentence he was then serving, and, therefore, he was erroneously released on the date he completed his eight-month term of imprisonment for revocation of his supervised release term (doc. 11-1, Roush decl. ¶ 8). Moreover, the petitioner was present in court in September 2009 when he was sentenced to the 33-month sentence in Case No. 3:09-CR-162-001, which was to be served concurrently with his previous eight-month sentence. As pointed out by the respondent, if the petitioner so ardently wanted to serve this sentence "continuously without interruption," he should have notified BOP or ICE staff that he had an existing sentence at the time of his erroneous release on November 26, 2009. Instead, after being deported back to his home country of the Dominican Republic on December 16, 2009, the petitioner returned illegally to Puerto Rico and was arrested only seven months later. Based upon the foregoing, the petitioner should not receive credit for the period during which he was released in error. *See Sanders v. O'Brien*, C.A. No. 3:13-cv-16, 2013 WL 5933929, at *9-10 (N.D.W.Va. Nov. 5, 2013) (granting motion to dismiss § 2241 petition where petitioner failed to show the U.S.M.S.'s failure to pick him up and transfer him to the BOP and his subsequent release from state custody based on this failure "shock the contemporary conscience"); *Herndon v. Ziegler*, C.A. No. 5:09-cv-50, 2009 WL 5216979, at *3 (N.D.W.Va. Dec. 30, 2009) (holding that it did not "shock the conscience" to require a petitioner who had been erroneously released "to serve the remainder of his undischarged federal sentence" and granting summary judgment on § 2241 petition seeking credit for time that he was erroneously released from custody).

13

### *July 6, 2010, to January 17, 2012*

The petitioner argues that he is being denied credit for the time he served in federal custody at M.D.C. Guaynabo in Puerto Rico from July 6, 2010, to January 17, 2012 (doc. 1-1 at 5). He alleges that the "total amount of credit applied to [] petitioner is zero (0) days" (*id.*).  The District of Puerto Rico ordered the petitioner on September 16, 2009, to serve a sentence of 33 months in Case No. 3:09-CR-162-001, to be served consecutive with the eight months of imprisonment imposed upon revocation of his supervised release term in Case No. 3:05-CR-004-001 (doc. 1-1, Roush decl. ¶ 15 & att. E). However, due to his erroneous release, he could not serve the sentences consecutively (*id.* & atts. B, D, E). Thus, the petitioner's federal sentence in Case No. 3:09-CR-162-001 commenced on July 6, 2010, when he came back into federal custody in Case No. 3:10-CR-253-001 (*id.* ¶¶ 15, 18 & att. H at 3).  A review of the petitioner's sentence computation sheet shows that the sentence computation began on July 6, 2010 (*id.*). So, the petitioner received zero days of *prior custody credit* for that period because it has been credited towards his current federal sentence in Case Nos. 3:09-CR-162-001 and 3:10-CR-253-001.  To grant the petitioner *prior custody credit* for that time period while also commencing his current federal sentence on July 6, 2010, would grant him dual credit, which is prohibited by 18 U.S.C. § 3585(b) and Program Statement 5880.28.  Accordingly, this claim has no merit.

### *Combined 129 Month Term of Confinement*

Lastly, the petitioner claims that the BOP erred in computing his 33-month and 96-month sentences in Case Nos. 3:09-CR-162-001 and 3:10-CR-253-001 together into an aggregate sentence. He claims this aggregated sentence is "contrary to the judgment of commitment order in case number: 3:10-cr-253-001" (doc. 1-1 at 3).

Title 18, United States Code, Section 3584(c) provides: "Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of

imprisonment." According to the affidavit of Andrew Roush, a Correctional Programs Specialist for the BOP, the BOP aggregated the petitioner's 33-month and 96-month sentences to allow him to earn more Good Conduct Time on the 129-month aggregated sentence, as opposed to if the 33-month sentence and the 96-month sentence were to run independently of each other (doc. 11-1, Roush decl. ¶ 20 & att. M). For the 33-month sentence, the petitioner would be eligible to earn 108 days of projected Good Conduct Time (*id.* ¶ 21 & att. M at 1). If the 96-month sentence were to run independently of the 33-month sentence, the petitioner would have started serving this sentence the date the court imposed the sentence, on January 17, 2012 (*id.* ¶ 21 & atts. G, I, & M at 2). Under the 96-month sentence, the petitioner would be eligible to earn 324 days of projected Good Conduct Time (*id.* ¶ 21 & att. M). However, by aggregating the sentences, the petitioner is eligible to earn 505 days of projected Good Conduct Time on the aggregated 129-month sentence, which is more than if the sentences were calculated separately (*id.* ¶ 21 & att. M).[3] The respondent further notes that, by aggregating the sentences, the petitioner was able to begin serving both sentences on July 6, 2010, rather starting the 96-month sentence on January 17, 2012, the date the sentence was actually imposed. The petitioner has not responded to the respondent's argument that he has received a benefit from the aggregation of the sentences. Accordingly, this claim is without merit.

---

[3] Mr. Roush's declaration and the respondent's brief state that the petitioner could earn a total of 484 days of Good Conduct Time if the sentences ran independently of each other (doc. 11-1, Roush decl. ¶ 21; doc. 11 at 21). It is unclear to the undersigned where this total comes from, as combining the projected Good Conduct Time from each independent sentence equals 432 days (108 days on the 33-month sentence plus 324 days on the 96-month sentence). The respondent's position that an aggregate sentence will allow the petitioner to earn more Good Conduct Time (505 days), however, is unaffected.

15

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment[4] (doc. 11) be granted.

s/Kevin F. McDonald<br>
United States Magistrate Judge

April 21, 2016
Greenville, South Carolina

---

[4] As both parties have submitted matters outside the pleadings and the undersigned has considered the submissions in the foregoing analysis, the undersigned recommends converting the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).